IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| **REBA WITHROW**<br>℅ DannLaw<br>15000 Madison Avenue<br>Lakewood, OH 44107<br><br>    Plaintiff,<br><br>vs.<br><br>**BREAD FINANCIAL**<br>℅ Ralph Andretta, C.E.O.<br>3095 Loyalty Circle<br>Columbus, OH 43219<br><br>    Defendant(s) | CASE NO.<br><br>JUDGE<br><br>MAGISTRATE<br><br>**COMPLAINT FOR DAMAGES**<br>**(Jury Demand Requested)** |

Plaintiff Reba Withrow ("Plaintiff" or "Withrow"), through Counsel and for her Complaint for Damages against Defendant Bread Financial ("Defendant") hereby states as follows:

**INTRODUCTION**

1.  The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting

agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. The distinction between a "soft" and "hard" credit inquiry is substantial. Specifically, a "hard" inquiry reduces a consumer's credit score, remains on credit reports for two years, and contains substantially more information (that is confidential and personal) than a "soft" inquiry. Further a "soft" inquiry does not appear on a credit report to any inquiring party[1], and does not lower an individual's credit score. See 15 U.S.C. §§ 1681b(a)(3)(A) and 1681b(c)

4. Moreover, a "hard" inquiry reduces a consumer's credit score, and remains on credit reports for two years, while a "soft" inquiry does neither.

5. Indeed, it is well established that merely inquiring about the possibility of a future transaction, or shopping for rates, is insufficient to satisfy the requirement of the FCRA to initiate the kind of full credit inquiry that is allowed when a consumer has initiated a transaction.

---

[1] A "soft" inquiry is only visible to the individual whom the credit report relates. As such, no inquiring party is able to view the "soft" inquiries, especially the number of soft inquiries that has occurred.

6. Withrow brings this action against Defendant Bread for its unilateral decisions through Comenity Bank and Comenity Capital Bank to not only compel multiple unauthorized hard pulls on Withrow's credit but also unilaterally allow an unauthorized line of credit to remain open which has caused significant and potentially irreparable damage to her credit and invaded her privacy.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff Reba Withrow is a natural person residing in Parma, Ohio. Withrow is "consumer" as that term is defined by 15 U.S.C. 1681a(c).

8. Defendant Bread Financial is a foreign corporation incorporated under the laws of the State of Delaware with its principal place of business located in Columbus, Ohio. The Defendant is the operator of multiple FDIC-insured financial institutions including Comenity Bank and Comenity Capital Bank. Withrow's interactions with the Defendant included interactions with the Defendant, Comenity Bank and Comenity Capital Bank.

9. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 et seq.; 28 U.S.C. §1331;

10. This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. §1367.

11. Venue lies in this District pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred, or a substantial part of property that is the subject of the action, is in this District.

## FACTUAL BACKGROUND

12. Withrow incorporates the allegations contained in Paragraphs 1 through 11 as if fully restated herein.

13. On January 4, 2023 the Plaintiff received an email from Comenity Capital Bank welcoming her for opening an Ultamate Rewards Card. *See* Exhibit 1 - January 4, 2023 email.

14. The Plaintiff was shocked to receive this email as the Plaintiff carefully protects her personally identifiable information ("PII") and monitors her financial accounts regularly.

15. Shortly after receiving Exhibit on January 4, 2023 the Plaintiff called Comenity Capital Bank spoke with a supervisor, "Amber" after speaking with a representative, "Margo". During the Plaintiff's call with Amber, the Plaintiff notified her that the Plaintiff had not authorized the account and requested it immediately be closed. Amber, on behalf of the Defendant, notified the Plaintiff that the account had been opened on January 1, 2023, provided the Plaintiff with some of the PII that was contained on the application including the Plaintiff's name, date of birth and social security number and that she (Amber) would begin the process of closing the account immediately.

16. Armed with the confirmation from the Defendant that her PII has been used without her consent on January 5, 2023 the Plaintiff filed a police report with the Parma (OH) Police Department. A copy of the report is attached as Exhibit 2 to this Complaint. *See* Exhibit 2 at pp 1-2.

17. In addition to filing the police report on January 5, 2023 the Plaintiff contacted all three credit reporting agencies (Experian, Equifax, and TransUnion) to notify them of the potential identity theft and ask them to place a fraud alert on her credit files.

18. Despite the January 4, 2023 conversation with Amber, on or about January 24, 2023 the Plaintiff received correspondence from Comenity Capital Bank, a copy of which is attached as Exhibit 3 to this Complaint, thanking the Plaintiff for applying for a Gamestop Credit

Card and notifying her that because of the credit freeze(es) the application could not be processed. *See* Exhibit 3 at p. 1.

19. On or about January 22, 2023, the Plaintiff enrolled in Discovery Identity Protection Plan ("Discover") at a cost of $15.00/monthly.

20. On or about January 23, 2023 the Plaintiff received a credit alert from Discover notifying her of the Gamestop inquiry. After receiving the alert the Plaintiff pulled a credit report from Experian which revealed that the Defendant, through Bread Financial, Comenity Bank and Comenity Capital bank has made the following unauthorized credit pulls:

   a. September 12, 2022 - Comenity Capital Back/Bread Financial

   b. December 25, 2022 - Comenity Bank

   c. January 1, 2023 - Comenity Servicing LLC (a subsidiary of Comenity Bank)

   d. January 1, 2023 - Comenity Capital Bank

   e. January 1, 2023 - Comenity Capital Bank/Ulta

   f. January 4, 2023 - Comenity Capital Bank/Ulta

   g. January 22, 2023 - Comenity Capital Bank

*See* Exhibit 4 at p. 1.

21. In addition to the unauthorized hard pulls, the Plaintiff also noticed that Comenity/Ulta had reported an active tradeline for the January 1, 2023 line of credit that as of January 4, 2023 Defendant's representatives indicated would be closed. *Id.*

22. The Plaintiff immediately filed online disputes with Experian as to each of these unauthorized pulls and the active tradeline.

23. On January 26, 2023 the Plaintiff called Experian as directed by Discover Identity Protection regarding the January 23, 2023 alerts. Experian deleted the hard pulls but the review of the open tradeline for the Comenity/Ulta card remains ongoing. *Id.*

24. Between January 26, 2023 through March 19, 2023 the Plaintiff continued to contact the Defendant, Discover and the Credit Reporting Agencies to ensure that no other accounts had been opened. During this time the Plaintiff continued to receive correspondence from the Defendant including a letter from Comenity Capital Bank dated February 4, 2023 indicated that Comenity Capital would delete the hard pull from her credit and a letter from Comenity Capital Bank dated March 1, 2023 notifying her that Comenity Capital would request a deletion of the Ulta Credit Card from her account.

25. To date neither of the promised deletions has occurred.

26. The actions originated by the Defendant has proximately caused the Plaintiff to suffer actual damages in the form of time lost in having to review her credit reports, contact the Defendant to try and have these accounts removed, contact the Credit Reporting Agencies to initiate unnecessary credit disputes, file police reports, lost wages from her employment at Discover, lost wages employment from 1-800-Flowers, and continue to monitor her financial accounts. In addition to these actual damages, the Plaintiff has suffered other economic damages in having to purchase the Discover Identity Protection product as well as the credit damage caused by the Defendant's actions.

27. In addition to her actual damages, the actions of the Defendant has caused Withrow to suffer actual non-economic damages in the form of frustration, anxiety, and fear that she will wake up every day that the Defendant through any of its entities will continue to make improper inquiries into her credit file and attempt to open more lines of credit.

**COUNT ONE**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681,** *et seq.*

28.  Withrow estates the allegations contained in Paragraphs 1 through 27 as if fully restated herein.

29.  Plaintiff is a "consumer" as defined by the FCRA.

30.  Defendant is a "person" as defined by the FCRA.

31.  Defendant's conduct violates both 15 U.S.C. § 1681q and 15 U.S.C. § 1681b by obtaining a consumer report under false pretenses by intentionally misleading Plaintiff, or knowingly without a permissible purpose and without authorization from Plaintiff.

32.  Based upon the allegations contained herein and Exhibits 1 through 4, every act to obtain Plaintiff's Consumer Report between September 22, 2022 and the present was willful as the Defendant knew, or should have known, that Withrow never provided her PII to the Defendant.  All of the applications, especially those after the January 4, 2023 call, were in deliberate or reckless disregard of its obligations and the rights of Withrow. *See* Exhibits 1 through 4 generally.

33.  Every unauthorized action by the Defendant is a separate and distinct violation of the FCRA as each act performed by the Defendant is a violation of 15 U.S.C. 1681n(a)(1)(B).

34.  Based on the allegations above, *supra*, the Plaintiff has suffered actual damages as a result of the conduct of the Defendants including, but not limited, to: actual damages in the form of time lost in having to review her credit reports, lost wages, contacting the Defendant to try and have these accounts removed, contact the Credit Reporting Agencies to initiate unnecessary credit disputes, file police reports, and continue to monitor her financial accounts. In addition to these actual damages, the Plaintiff has suffered other economic damages in having

7

to purchase the Discover Financial Services product as well as the credit damage caused by the Defendant's actions. In addition to her actual damages and economic damages, the Plaintiff has suffered non-economic actual damages in the form of emotional distress as described herein, *supra*.

35. As the Defendant has violated 15 U.S.C. 1681n(a)(1)(B), the Defendant is liable to Withrow for actual damages in an amount to be determined at trial but at least $1,000.00.

36. In addition to the actual damages above, the Defendant is liable an award of punitive damages in an amount to be determined at trial.

37. In addition to the actual damages and punitive damages above, the Defendant is liable for Withrow's attorneys fees and costs.

## COUNT TWO:
### Intrusion Upon Seclusion

38. Withrow realleges and incorporates all of the allegations contained in Paragraphs 1 through 37, as if fully contained herein.

39. Based upon the allegations above, *supra*, and Exhibits 1 through 4 between September 22, 2022 and the present the Defendant has intentionally interfered with the solitude, seclusion or private concerns or affairs of Withrow. Specifically the Defendant who had no express authority to obtain Withrow's Credit, performed at least seven (7) hard pulls which the Defendant knew or should have known were unauthorized and would proximately cause harm to Withrow's credit score and opened and allowed to remain open a line of credit which Withrow did not authorize.

40. The actions of the Defendant into Withrow's affairs occurred in such a way that would be highly offensive to a reasonable person. A reasonable person would not believe that a

sophisticated creditor like the Defendant would perform multiple unauthorized credit pulls and allow a line of credit to remain open despite the person contacting the company to verify that identity theft had occurred.

41. The actions of the Defendants described above are a direct intrusion into Withrow's personal affairs and the Defendant is liable, as applicable, for actual damages in an amount to be determined and for an amount of punitive damages to be determined.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Reba Withrow respectfully requests an Order against Defendant Bread Financial as follows:

A. For actual damages in a total amount to be proven at trial against the Defendant for the allegations contained in Counts One and/or Count Two;

B. For an award of statutory damages of $1,000.00 for each unauthorized pull against the Defendant, as applicable, for the allegations contained in Count One;

C. For an award of punitive damages in an amount to be determined at trial against the Defendant for the allegations contained in Counts One/or Count Two.

D. For an award of Withrow's reasonable costs of litigation and attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against the Defendant as applicable for each violation of the FCRA contained in Count One; and

E. For all other relief this Court may deem just and proper.

Respectfully submitted,

/s/Brian D. Flick, Esq.
Brian D. Flick (0081605)
Marita I. Ramirez (0101882)
Marc E. Dann (0039425)
Jeffrey A. Crossman (0073461)

9

                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                    

DannLaw
15000 Madison Avenue
Lakewood, OH  44107
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Reba Withrow*

## JURY DEMAND

Plaintiff Reba Withrow hereby respectfully demands a trial by jury on all such claims that may be so tried.

/s/Brian D. Flick, Esq,.
Brian D. Flick (0081605)
Marita I. Ramirez (0101882)
Marc E. Dann (0039425)
Jeffrey A. Crossman (0073461)
DannLaw
*Counsel for Plaintiff Reba Withrow*